CITY OF LITTLE ROCK *v.* SUN BUILDING & DEVELOPING
COMPANY.

4-5637                                              134 S. W. 2d 583

Opinion delivered November 27, 1939.

*Ed I. McKinley, Jr.,* and *Lee Cazort, Jr.,* for appellant.

*Cockrill, Armistead & Rector,* for appellee.

*Louis Tarlowski, Amicus Curiae.*

SMITH, J.   In 1928, the Sun Building & Developing Company, hereinafter referred to as appellee, bought a large tract of land in the Pulaski Heights neighborhood within the corporate limits of the city of Little Rock, for development purposes.   Appellee caused a survey of

this land to be made into blocks and lots, with intervening streets, and filed a plat of the survey of the property and a bill of assurance with the city council of the city of Little Rock, which the council refused to accept. Subsequently an amended plat and bill of assurance, with certain restrictive covenants, was filed with and accepted by the city council in an ordinance of the council No. 4295. The land so platted is known as Shadowlawn Addition. The accepted plat and bill of assurance, with its restrictive covenants, provided that lots 1 to 24, and lots A, B, C, D, E, F, G and H, which, together, comprised a block, might be used for either business or residential purposes. The restrictions shown on the bill of assurance provided that the business houses should be only one story high, and should cost not less than $20 per front foot, and should be built only of brick, tile, stone, or cement, and that no residence should cost less than five thousand dollars. Lots 1 to 6, inclusive, and a right-of-way across lots A, E, and F, were sold and business buildings were erected thereon.

Thereafter, on March 17, 1937, the city council passed a zoning ordinance, No. 5420, classifying all property in the city, including the Shadowlawn Addition, under which the property here involved was classed as residential property, and the ordinance provided that property so classified should not be otherwise used. The zoning ordinance provided for a board of adjustment and the method by which the city council could make changes in the classifications. An unsuccessful attempt was made to change the classification of the block here described, whereupon this suit was filed November 6, 1937, to obtain that relief. Lots 1 to 24 of this block front west on Prospect Avenue. Other lots on the opposite side of the block front east on Jackson street, with an easement between the lots fronting east and those fronting west. The lots fronting on Prospect Avenue have a uniform depth of 96 feet, and none are wider than 25 feet. Other lots are as narrow as 20 feet.

It was alleged and the testimony established the fact to be that these lots 1-24 front upon a street car track running on Prospect Avenue, which is about a foot

higher than the lots, and that because of the terrain the lots were not adapted to residential purposes. All of these lots, as has been said, were 96 feet in depth, but only 78 feet thereof can be used for building purposes, due to the fact that 16 feet on the front and 2 feet at the rear were reserved as an easement to afford ingress and egress to the interior lots, and for proper parking space for automobiles. The front of the business buildings which have been erected in this block conform to this easement, and are set back 16 feet from the property line. It appears from the map of the survey that lots B, C and D might be replatted, but, even so, the lots of which they could be made a part would then have a depth of only 134 feet available for building purposes. Under the zoning ordinance, no building lot may contain less than 7,000 square feet, which is the equivalent of a lot 50 by 140 feet. It would, therefore, be necessary, if one desired to build a residence, to purchase not less than 3 of these lots. The ordinance requires a front yard having a minimum depth of 50 feet. The undisputed testimony is to the effect that it would be difficult, if not impossible, to sell those lots for residence purposes under these restrictions, and that not more than $8,000 could be obtained for all of them if restricted to residential uses, while, on the other hand, the lots are adapted to business purposes and are worth $20,000 if they may be so used.

It is insisted that no showing was made that lots 1-24 were required for business purposes, as other and sufficient lots are available for that purpose. The testimony is to the effect that north and across what would be Prospect Avenue if that street were extended on a straight line through Country Club Station, instead of curving to run in front of lots 1-24, lies other property zoned as business property, on which business houses have been erected, and that there is a space of 200 feet in one block and 150 feet in another already zoned for business purposes, and it is insisted that no more space is required for that purpose.

It appears that all this property, north across the street from the Shadowlawn property as well as the por-

tion of the Shadowlawn Addition already devoted to business purposes, is owned by the same owner, so that the effect of this zoning ordinance is to give this owner a monopoly of the business sites in that vicinity. This result was, no doubt, incidental, and not intentional, but the fact remains that a monopoly has been created.

The court below found that, as applied to appellee's property, the zoning ordinance was unconstitutional and void and constituted a taking of appellee's property for public use without compensation, and from that decree is this appeal.

It is not contended that the zoning ordinance is unconstitutional in its entirety, but only so as applied to appellee's property. We announce, in a general way, the legal principles which must be applied to the decision of the questions presented on this appeal.

It may be first said that the opinions of this court in the cases of *Herring* v. *Stannus,* 169 Ark. 244, 275 S. W. 321, and *Little Rock* v. *Pfeifer,* 169 Ark. 1027, 277 S. W. 883, definitely decide the general proposition that such legislation is constitutional; but it also appears, from those cases and especially the one last cited, that there are limitations upon this power, and that it is not absolute and unlimited.

It is pointed out at § 1051 of McQuillin's Municipal Corporations (2d Ed.), Vol. 3, p. 369, that such legislation is not upheld in all the states as constitutional, but that a majority of the states which have passed upon the question have done so, and that this is the modern tendency.

Possibly the leading case on the subject, and the one most frequently cited, is that of *Village of Euclid et al.* v. *Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016. In that case Justice SUTHERLAND said: "Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive." In that case the learned justice said that any line drawn or district established by a zoning ordinance was bound

to elicit complaints from the owners of property near which the line was drawn, but that there must be a line somewhere, that such lines often worked hardships in individual cases, but that this was not a fatal objection to the creation of zoning districts, and that unless these lines might be drawn, zoning districts could not be created. He also said that the hardship which does result in some cases was offset by the privilege of living in a community whose systematic growth and development had been provided by the zoning ordinance, and that there is also a corresponding benefit to the public at large, which flows even to the individual whose land is restricted. But in the opinion it was also said: "When, if ever, the provisions set forth in the ordinance in tedious and minute detail, come to be concretely applied to particular premises, or to particular conditions, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable."

In a later opinion by the same learned justice (*Necto v. City of Cambridge,* 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842) a practical application was made of the principle that the arbitrary use or abuse of the police power would be enjoined.

Our own case of *Little Rock* v. *Pfeifer, supra,* is to the same effect. In that case, while the constitutionality of the zoning legislation was recognized, we said that an unreasonable and arbitrary building restriction constituting an abuse of discretion by the city council was void, and that an aggrieved property owner was entitled to relief in equity, whether provision for granting relief was made in the statute or ordinance or not.

In all the cases in which zoning ordinances have been upheld, it is recognized that such legislation frequently, if not generally, operates to reduce the value of property the use of which is restricted. But these cases are to the effect that such damage does not constitute the taking of private property within the inhibition of the Constitution (art. 2, § 22) against the taking of private property for public use without making compensation therefor, and that it is not required that the owner be compensated for this loss of value. The theory

is that the owner of such property is sufficiently compensated by sharing in the general benefits resulting from the exercise of the police power. Many cases to that effect are cited in the note appearing at page 905, 12 C. J., in the article on Constitutional Law, subhead Police Power. But these and all other cases appear to be in accord in holding that this power may not be arbitrarily used, and must in all cases bear a definite relation to the health, safety, morals and general welfare of the inhabitants of that part of the city where the property zoned is situated. .

Applying these principles to the restricted use of lots 1-24, we think the ordinance is invalid, but as the provisions of the zoning ordinance are, by the express terms thereof, severable, this holding has no application to other portions of the city. Here, the undisputed testimony is to the effect that the ordinance reduced the value of the property from $20,000 to $8,000, and it does this by forbidding its use for business purposes, and by imposing restrictions upon its use for residential purposes, which the undisputed testimony shows will make the sale of the lots for residential purposes difficult, if not impossible. Only houses costing not less than $5,000 may be erected, and these on lots containing not less than 7,000 square feet, and a front yard of 50 feet must be provided. The plat and bill of assurance filed with and accepted by the city council provided that all these lots from 1 to 24, inclusive, might be sold and used for either business or residential purposes, and six of the lots are now in actual use for business purposes, and were being so used when the zoning ordinance was passed.

The ordinance will necessarily require the purchasers of the lots adjoining the business houses to build their residences adjoining these building properties. Moreover, the preponderance, if not the undisputed, testimony, is to the effect that as the neighborhood builds up community needs will require additional business buildings, and that the logical direction for this development will be on these lots fronting Prospect Avenue along which the street car tracks now run, to state highway No. 10, which forms the southern boundary of the block.

■

The testimony is to the effect that the traffic on Prospect Avenue and State Highway No. 10, which form the west and south boundaries, respectively, of lots 1-24, is already heavy, and is constantly increasing in volume, as that avenue and that highway are the principal thoroughfares in and through that neighborhood. Necessarily, this fact alone will reduce the desirability of these lots for residential purposes.

We conclude, therefore, that the court below did not err in holding the zoning ordinance void in so far as it applied to these lots 1-24, and that decree is affirmed.