GAMMILL *v.* CITY OF BLYTHEVILLE.

5-982                                      291 S. W. 2d 503

Opinion delivered June 18, 1956.

*James Gardner* and *Gene Bradley,* for appellant.

*Elbert Johnson, Taylor & Sudbury* and *Reid & Burge,* for appellee.

ED. F. McFADDIN, Associate Justice. This suit is an effort by appellants to be allowed to erect a filling station on lots they own in the City of Blytheville. The lots are located outside of the fire limits; and Ordinance No. 422 of Blytheville provides that no filling station, apartment house, or building for any business purpose, shall be erected in Blytheville outside of the fire limits until a permit be obtained from the City[1].

The appellants applied to the City Council for such permit; a number of property owners objected; the matter was heard by the City Council; and the permit denied. Appellants then filed this suit in the Chancery Court to enjoin the City and its officials from interfering with appellants in the erection of the proposed filling station on the lots in question, alleging, *inter alia,* that the lots were in a business district; that they were suitable only for business property; and that the City had acted arbitrarily in refusing the permit. Various property owners intervened to support the City; the Chancery Court denied the appellants the prayed relief; and this appeal ensued. The issues here are: (1) did the City Council act arbitrarily in refusing the permit; and (2) did the Chancery Court decide against the preponderance of the evidence.

The complaint alleged, and the evidence offered by appellants was designed to show: that "Crosstown" is a business section in Blytheville located several blocks West of the main business section; that U. S. Highway No. 61 traverses Twelfth Street or Division Street, running North and South; that Main, Walnut, Chickasawba and Hearn Streets run East and West and intersect Twelfth or Division Street — Main being the South one of said streets and Hearn being the North one; that the lots owned by the appellants are located at the Northeast corner of the intersection of Division and Walnut Streets; that from Walnut, extending South to the City

---

[1] This Ordinance No. 422 is not a zoning ordinance, but a restrictive ordinance. The authority of the City to have an ordinance of such type is not questioned on this appeal.

limits, there are many places of business fronting on Division Street, being filling Stations, restaurants, tourist courts, grocery stores, etc.; that appellants' lots are on U. S. Highway No. 61, which is an arterial highway; that across Walnut Street South of appellants' lots, there is a drive-in ice cream place, called "Kream Kastle"; that the natural development of the business section of "Crosstown" must be to the North; and that the said lots are ideally suited for a filling station.

Appellants also urge most vigorously that their lots are just North across Walnut Street from the property involved in the case of *City of Blytheville* v. *Lewis,* 218 Ark. 83, 234 S. W. 2d 374, wherein the property owner was permitted to make commercial use of the lot, and that the drive-in ice cream place, called "Kream Kastle" is now on the lots involved in that litigation. In addition to the case of *City of Blytheville* v. *Lewis, supra,* appellants cite us to these cases, which are urged as supporting appellants' contention: *City of Little Rock* v. *Pfeifer,* 169 Ark. 1027, 277 S. W. 883; *City of Little Rock* v. *Sun Bldg. & Developing Co.,* 199 Ark. 333, 134 S. W. 2d 582; *City of Little Rock* v. *Bentley,* 204 Ark. 727, 165 S. W. 2d 890; *City of Little Rock* v. *Joyner,* 212 Ark. 508, 206 S. W. 2d 446; and *City of Little Rock* v. *Stannus,* 218 Ark. 893, 239 S. W. 2d 283. Appellants claim that in *City of Blytheville* v. *Lewis, supra,* we recognized "Crosstown" as a business district in Blytheville; and they quote to us this language from *City of Little Rock* v. *Pfeifer, supra*:

"When a business district has been rightly established, the rights of the owners of property adjacent thereto cannot be restricted so as to prevent them from using it as business property. It is the contention of the protestants that residence property adjacent to a business district becomes, on that account, less desirable for residence use. Conceding this to be true, and it is undoubtedly true, in a sense, that property thus located is not as desirable as residence property, it demonstrates the rights of owners of border line property between residence and business district to use their property for either purpose. In other words, if it has become less de-

sirable for residence property because of its proximity to the business district, they have the legal right, without interference, to use it for business purposes.''

Even though the appellants have made a strong case, nevertheless, we have these matters: (a) the City Council of Blytheville denied the permit; (b) the Chancery Court denied relief; and (c) there is sufficient evidence to sustain the decisions of both the City Council and the Chancery Court. Briefly, here is a resume of some of the evidence offered by the appellees: (1) Walnut Street marks the extreme Northern limits of the ''Crosstown'' section; (2) the only business structure of any sort North of Walnut Street is a private hospital located on the Northwest corner of the intersection of Division and Hearn Streets, two blocks North and across Division Street from the lots in question; (3) this private hospital was built more than twenty years ago and before the City of Blytheville had enacted the ordinance here involved; (4) extending from the appellants' lots East to the main business district of Blytheville are seven blocks, each and all containing many residences and no business establishments; (5) extending West from appellants' lots to the city limits of Blytheville there are no business structures on Walnut Street; (6) in the same block with appellants' lots there have recently been constructed several fine homes, each costing from $20,000.00 to $50,000.00, and several of these homes have been constructed in the last four years; (7) many fine homes have been constructed on Walnut Street and Chickasawba Street since 1950, and there has been no business development on either of these streets. Appellees also lay great stress on our language in *City of Blytheville* v. *Lewis, supra,* wherein we said:

''There is little dispute in the evidence which shows that for more than 20 years a well-defined business district, known as 'Crosstown,' has been maintained along Division Street for several blocks northerly to the point where appellee's lot is located, and with Walnut Street as the northern terminus of said district.''

It is emphasized that after the above quoted language used in 1950 — that Walnut Street was the North-

ern terminus of the district — the. City of Blytheville has not allowed any permits for business property North of Walnut Street; that fine homes have been built on the lots adjacent to or near to the lots in question; and that we have here an advancing residential district, and not one which is retreating before the advance of commercial development. This last matter is a most cogent argument and, with the other recited facts, distinguishes the case at bar from any of those cited by appellants. Here we have an *advancing* residential district, with new and fine homes constructed close to appellants' lots. This is not a case wherein old homes have been allowed to deteriorate in the face of an advancing commercial district; but this is a case in which new homes are being built nearer and nearer to the lots now sought to be used for business purposes.

We recognized (in *City of Little Rock* v. *Sun Bldg. Co.*, 199 Ark. 333, 134 S. W. 2d 583) that a line must be drawn somewhere to separate business property from residential property. In *City of Blytheville* v. *Lewis, supra,* this Court said that Walnut Street was the North limit of the ''Crosstown'' district. The City Council has adhered to that line, and fine residences have been built, with Walnut Street as the line of demarcation between residence and business property. The property here involved is adjacent to such residences and is susceptible to use as residential property. We cannot say that the City Council was arbitrary in refusing appellants a permit, or that the Chancery Court decided against the preponderance of the evidence.

Affirmed.