CITY OF LITTLE ROCK *v.* GARDNER.

5-3452                                       386 S. W. 2d 923

Opinion delivered February 22, 1965.

[Rehearing denied March 29, 1965]

*Joseph C. Kemp,* City Attorney, by *John B. Plegge* and *Perry V. Whitmore,* Assistant City Attorneys, for appellant.

*Moses, McClellan, Arnold, Owen & McDermott,* by *James R. Howard,* for appellee.

FRANK HOLT, Associate Justice. The appellee owns and lives on her property at 1723 Broadway Street in Little Rock, Arkansas. She applied to the Little Rock Planning Commission for the rezoning of her property from "D" Apartment District to "F" Commercial District. Upon her application being denied, she appealed to the Board of Directors of the city and again her request was denied. The appellee then filed this action to enjoin the appellant

from denying her the right to use her property for "F" Commercial purposes.

Appellee alleged that the refusal of the appellant to rezone her property was arbitrary and placed unreasonable limits upon the use of her property; that the limitations upon the use of her property "bears no definite relationship to the health, safety, morals, and general welfare of the inhabitants of the area concerned; that the area surrounding the plaintiff's property is no longer suitable for residential use because of heavy traffic, the existence of large shopping centers in the immediate vicinity, the deterioration, decay and bad repair of the structures in the area and the obsolescence of such structures, and because of the removal of population groups within the city." Appellee also alleged that she had been deprived of her property in violation of the Fourteenth Amendment of the U. S. Constitution and Article 2, §§ 8 and 22 of the Constitution of Arkansas. The chancellor found that the refusal of the city authorities to rezone plaintiff's property from "D" Apartment to "F" Commercial is "arbitrary, unlawful and discriminatory" and enjoined the appellant from denying appellee the right to use her property for "F" Commercial purposes. From this decree appellant brings this appeal.

For reversal appellant primarily contends that the chancellor's finding that the action of the appellant was arbitrary in refusing to rezone appellee's property is not supported by a preponderance of the evidence. We cannot agree.

In the very recent case of *City of Little Rock* v. *Andres,* 237 Ark. 658, 375 S. W. 2d 370, the property in question was located at 2115 Broadway, or 3½ blocks from the property in the case at bar. There we affirmed the chancellor's holding that the action of the city authorities was arbitrary in refusing to rezone that property from "C-2 Family District" to "F" Commercial. We are of the view that the case at bar is controlled by our opinion in the *Andres* case and the decisions cited therein.

The appellant introduced into evidence as an exhibit "Future Land Use and Zoning Plans, Census Tract 6". The area of this tract is "bounded generally by Fourteenth Street on the north, Roosevelt Road on the south, Cumberland Street on the east and Chester Street on the west." An examination of this exhibit indicates that both the Andres' and the appellee's property are located approximately within the center of the area designated on Broadway between Fourteenth and Twenty-fifth Streets. The Andres' property is located at 2115 Broadway, or four blocks from the south end of this area which is zoned Commercial. Appellee Gardner's property is located at 1723 Broadway, or three blocks from the north end of this area where commercial zoning also exists. The Andres' and appellee Gardner's property are only three and one-half blocks apart and in the instant case appellant has offered no evidence that sufficiently distinguishes it from the *Andres* case. In fact, in the *Andres* case the property was zoned "C-2 Family District" and on appeal we approved the right of the property owner to use his property for "F" Commercial purposes. In the case at bar the property is zoned "D" Apartment. Thus, since "F" Commercial zoning is sought, the degree of transition requested is actually less of an impact upon rezoning than that sought in the *Andres* case. See footnote in *City of Little Rock* v. *Garner,* 235 Ark. 362, p. 363, 360 S. W. 2d 116, for definition of zoning classifications.

The appellant presented as witnesses three property owners within close proximity to appellee's property. Two of these witnesses testified that they owned old houses similar to appellee's and they had economically converted them into apartment houses. Another witness testified as the owner of an apartment building located two blocks from appellee and one block from commercial zoning, a filling station at Fourteenth and Broadway, which appears to have no detrimental effect upon the value of the apartment building. These and also expert witnesses presented by the city offered evidence that appellee's property could be economically converted into

and used for an apartment house and that to allow appellee to use her property for commercial purposes would have an adverse effect upon the use of the surrounding property for rental purposes.

The appellee presented evidence, however, that the homes in her neighborhood have deteriorated to such an extreme degree, coupled with the usually heavy traffic upon Broadway as a four-lane thoroughfare of national highways, that her property is no longer suitable for "D" Apartment use. Appellee presented Mr. Andres as a witness in support of her position. According to him, a residence on Broadway valued at $12,000.00 increases in value to $25,000.00 upon being zoned "F" Commercial; that a shopping center is located at the corner of Twenty-fifth and Broadway and across the street is a lamp shop and filling station; that a house at 2100 Broadway had been vacant for a long time and that other houses in this general area were vacant; that rental houses were occupied mostly by transients or for one to two months; that most of the structures were old and lacked modern facilities and that it is too expensive to convert these older residences into apartments as a profitable venture; that no parking facilities exist, other than on the regular size lots, since parking is not allowed on Broadway or in the adjacent alleys; that he was unable to sell his property before it was rezoned although he had listed it with realtors and that now he has received attractive offers to sell as commercial property.

Another witness, Mr. Lewis, an attorney and experienced in the realty business, testified that he owned property at 2123 Broadway; that his house had been divided into rental units and was for sale; that during the four or five years he had owned the property he had experienced much difficulty in renting it and had to reduce the rent several times in order to attract tenants; that he had been unsuccessful in his efforts to sell his property; that some of his clients on Broadway had also been unable to sell their property because of the existing zoning classification and that in his opinion the best

use of his and appellee's property would be for commercial purposes.

The appellee testified that her property was a seventy-five-year-old two-story frame home with 11 rooms and 2 baths located on a lot 100x140 feet which she had owned the past twenty-three years; that she was unable to maintain it in good repair; that four different realtors had been unable to sell it the past ten years although she had reduced the price considerably; that some of the houses in the area of appellee's property, and according to pictures as exhibits to her testimony, are in a deteriorated condition; in fact, a sign on one reads "Structure Closed, Unfit For Human Habitation, City Health Department"; that a house nearby is being razed and it appears from her testimony that in her neighborhood when a house is demolished or razed there is no new construction of a residence or apartments. She had ascertained that it would cost approximately $90,000.00 to convert her residence into a twelve-unit apartment building and that such would be impossible for her as well as a questionable financial venture for anyone. Further, the lack of schools and play grounds in the area, the traffic count of 15,000 vehicles per day on Broadway as a four-lane thoroughfare, made it impractical to use her property for multiple apartment units.

In the case at bar, as we said in the *Andres* case, the property would have a reasonable and satisfactory value as commercial property according to the undisputed evidence. There we said:

"* * * If a lot becomes vacant because the house is condemned or is destroyed by fire, it has no value unless the property can be rezoned as commercial. An apartment house could not be built and rented successfully because no parking is permitted on Broadway and one lot would not be large enough to take care of the required parking."

One of the main purposes of zoning and rezoning is to stabilize property values in a neighborhood, thus encouraging the most appropriate use of the land.

Appellant next contends that the chancellor erred in refusing certain testimony offered by appellant. On appeal we try chancery cases de novo. When we consider all of the competent evidence in the case at bar we cannot say that the finding of the chancellor that the city authorities acted arbitrarily in refusing to rezone the property in question is contrary to the preponderance of the evidence.

HARRIS, C.J., and McFADDIN and WARD, J.J., dissent.

CARLETON HARRIS, Chief Justice (dissenting). I do not feel that the proof in this case justifies a holding that the city authorities were arbitrary in refusing to rezone the property involved from the designation of "D" Apartment District to "F" Commercial District. The majority apparently depend almost entirely upon the recent case of *City of Little Rock* v. *Andres*, 237 Ark. 658, 375 S. W. 2d 370. That opinion contains language which would appear to hold that no part of Broadway is now suitable for residential purposes, but since *Andres* only actually involved a small area on Broadway, I have considered the "sweeping language" as to the entire street to be nothing more than *dicta*. If all of the language employed in the *Andres* case is to be considered a precedent, it appears to me that the City of Little Rock is wasting time in opposing any requests for commercial zoning along Broadway.

I respectfully dissent.

ED. F. McFADDIN, Associate Justice (dissenting). This case is the logical sequal to *City of Little Rock* v. *Andres*, 237 Ark. 658, 375 S. W. 2d 370, in which this Court allowed rezoning. I dissented in that case, and I dissent in this one.

There is no need to review the evidence *in extenso;* but I mention it briefly. Mrs. Hutto lives at 1719 Arch

Street, directly across the alley from the property in question. Mrs. T. J. Reynolds owns property at 18th and Broadway, less than a block from the property in question. Mr. Petty lives at 2020 Broadway; Mr. Harding manages his mother's property which is located at 1520 Broadway, two blocks from the property in question. All of these witnesses testified as opposed to this rezoning petition.

There was other testimony in addition to these property owners: Mr. Cooper, as an engineer of the State Highway Department, testified as to the traffic volume on Broadway; Mr. East, a real estate broker, testified against the rezoning; Mr. DeNoble, the Director of Community Development of the City of Little Rock, testified at length against rezoning and gave most cogent reasons. Mr. Eurman, as the City Planner of the Metropolitan Area Planning Commission, testified against the rezoning of this property. All of the witnesses for the appellant offered strong evidence against this "strip zoning" which is being accomplished in this case. I think the Chancery Court decided this case against the preponderance of the evidence. But it appears that the Arkansas Supreme Court has rather clearly indicated an intention to rezone Broadway in Little Rock which will result in "strip zoning," a practice disapproved by all authorities.

For the reasons herein stated, I respectfully dissent.

WARD, J., joins in this dissent.