Leon FIELDS et al v. CITY OF LITTLE ROCK et al

5-5797                                    475 S.W. 2d 509

Opinion delivered January 24, 1972

*Warren & Bullion,* for appellants.

*Kemp & Whitmore,* for appellees.

Lyle Brown, Justice. This is a zoning case. Appellants, Leon P. Fields and Tom O'Donoghue unsuccessfully sought a change from A-single family, to E-apartment classification to permit the construction of a high-rise apartment. The change was denied by the city planning commission and by the city board of directors. On appeal to the chancery court the denial of change in classification was sustained. Appellants here contend (a) that the decision of the lower court was contrary to a preponderance of the evidence, and (b) that the trial court erroneously applied the law governing the case.

The subject property consists of a tract of sixteen lots in Bellevue Addition in Little Rock. It is bounded on the south by X Street. Immediately south of X Street the property is zoned E-apartment, limited. Most of that tract is vacant except for a six-unit, two-story apartment building and a residence. Continuing south to Cantrell Road and for some 200 feet the property is F-commercial. On that tract are located an animal clinic and a nursery. Foxcroft Road leaves Cantrell Road and runs north along the west side of appellants' property. On the west side of Foxcroft Road the property is zoned F-commercial and is not yet developed. Northwest and adjacent to appellants' property is a tract 100 x 150 feet which is zoned D-apartment. Presently thereon is located a small office building, non-conforming.

The other two sides of subject property are bounded by residential additions. On the east side is Wilton Heights Addition and on the north side is Foxcroft Addition. There are 113 homesites constructed or under construction in Foxcroft. Those homes range in values from $30,000 to $100,000. A recreational club, known as the Racquet Club, is located in Foxcroft and very near the subject property. Swimming and outdoor tennis constitute a considerable portion of the recreation at the club. There are approximately 45 homes in Wilton Heights and as best we can discover it is completely developed. Those homes range in value from $15,000 to $30,000. Both additions are described as being attractive, well-kept, and relatively quiet.

The record is voluminous, consisting of three volumes. We see no reason for attempting an abstract of the testimony of each and every witness. The problem can better be approached, and with brevity and clarity, by listing the categories of major contentions made by the city and the intervening adjacent homeowners, together with the responses thereto made by appellants. Those categories are (1) noise, (2) traffic and density of use, (3) property values, and (4) privacy.

(1) *Noise.* Paul J. Mooser was called by the city in opposition to the rezoning. He operates as a realtor,

a land developer, and an appraiser. The noise level around apartments, as distinguished from residences, so he said, is one of the main features that depreciate the nearby residences. He referred to the high concentration of vehicles, which he said in this case could be as high as 280 units. He listed such noise makers as car doors slamming, engines starting, noise from motorcycles, spinning wheels. the dropping of bottles and cans, and the people coming and going, "talking and laughing and shouting or hollering." The home of Helen Littleton is adjacent to the subject property. She anticipated noise coming from the many deliveries coming to the apartment, the extra people and the traffic which would be increased. Witness E. F. Brueggeman, an architect with many years experience, testifying for appellant, discounted the noise factor. Other than the starting of automobiles he was not aware of anything that would create any unusual outside noise. The planned recreational facilities would not, he said, create any more noise than the facilities at the Racquet Club.

(2) *Traffic and Density of Use.* Don R. Venhaus testified against the rezoning. He is a specialist in the field of community development and planning. The planning commission, for which he helped evaluate the subject property, recommended that the application for E classification be denied. "It was our judgment that E allowed too high a level or too high a density of use on the property in this location, and the characteristics of the land use around it." He anticipated that in addition to the traffic created by 200 residents themselves would be visitors and service vehicles coming and going. He referred to a traffic count on Foxcroft—2,024 vehicles for a twenty-four hour period—which he considered already heavy for a residential street twenty-seven feet in width. Witness Mooser agreed that the density of vehicles from a highrise apartment would put a heavy burden on Foxcroft Road. Four of the homeowners related their experiences in getting out on Cantrell Road and expressed alarm over the anticipated increase in traffic.

Lloyd Pearce, for seventeen years a realtor and appraiser, is concededly an expert in those fields. He said

he experienced no problem in entering Cantrell from Foxcroft. In fact he said the width of streets had very little to do with traffic safety. Witness Leon Fields, with considerable experience in real estate investments, also minimized the traffic problem. He said he had observed traffic conditions along Foxcroft Drive dozens of times and had never seen a traffic problem at Foxcroft and Cantrell. Appellants' witness, Brueggeman, compared the traffic to be generated by the new apartment to the traffic in and out of Riviera Apartments, a twelve-story highrise. He said the traffic is spread out over the day and would average eight or ten cars an hour. "There are many people there that don't leave the apartment for three-four days at a time."

3. *Property Values.* Witness Paul Mooser said: "I have formed an opinion that the development of subject property as a highrise apartment would be detrimental to the homes that are constructed in the area; especially those that are immediately adjacent. Normally this type of thing will affect the value from ten to twenty percent." A majority of the property owners who intervened and testified expressed fears of devaluation of their properties. On the other hand the experts who testified for the appellants were firmly of the opinion that the presence of the apartment would not depreciate the value of neighboring properties. Moreover, they opined that the presence of the structure would in fact be beneficial to the neighbors in Foxcroft and Wilton Heights in that it would serve as a buffer between the residences and the commercial area to the west of the highrise.

4. *Privacy.* Two of the intervening homeowners insisted that no amount of screening and shrubbing could protect them in their privacy from the prying eyes of their fifteen-story neighbors. On the other hand there was evidence that the higher stories not shielded by screening and shrubs would actually look down upon the roofs of the neighboring homes. The homeowners retort that they will not be protected in their customary outdoor living.

In addition to the four areas of controversy recited we should add that the proposed apartment would, according to appellants' proof, be of the luxury type, screened and landscaped in an effort to minimize noise, and a central entrance supervised so as to keep out trespassers. It should be pointed out that the appellants are asking for rezoning so they can sell at the highest possible price. The proposed purchaser or purchasers are undisclosed. The point is that these appellants would have no interest in the type of development. In describing the construction and operation the appellants are going on the assumption that it will be developed as a first class highrise apartment.

It is the duty of the chancellor to determine whether the zoning authorities acted arbitrarily. If the chancellor's findings in that respect are supported by a preponderance of the evidence, we affirm. *City of Little Rock v. Andres,* 237 Ark. 658, 375 S. W. 2d 370 (1964). As can be seen from the evidence we have abstracted, as well as a separate volume of exhibits, all major points in issue were controverted. The primary responsibility for resolving the weight and credibility of the evidence lies with the chancellor. We are unable to say that his conclusions were contrary to the greater weight of the evidence.

The second point for reversal is the assertion that the trial court erroneously applied the law to this case. Appellants rely on two cases which they hold are authority for the proposition that when property sought to be rezoned is situated in an established commercial district, the right to rezoning becomes vested. They cite *Little Rock v. Pfeifer,* 169 Ark. 1027, 277 S. W. 883 (1925), and *Little Rock v. Parker,* 241 Ark. 381, 407 S. W. 2d 921 (1966). In the *Pfeifer* case the immediate neighborhood in which a new business building was sought to be constructed was saturated with businesses; so much so that this court said that the area had become a business district. We held that the old residences would have to give way to the expansion of the established business area. Also, appellants concede that a strict and literal interpretation of the language in

*Pfeifer* is no longer appropriate since our decision in *Parker.* (Also, see Act 186 of 1957 which upgraded zoning legislation). Now with respect to the holding in *Parker,* appellants say: "If we understand the holding in *Parker* it is that the city could not prevent that property from being zoned commercially, but that as quiet business was a commercial use, the limitation thereto was not arbitrary."

In the first place the subject property is not situated in an established commercial district, as was the situation in *Pfeifer.* It is bounded on the east and north by the two residential districts we have described. On the south side, X Street serves as a buffer for any further development of F-commercial. On the west, Foxcroft Road lies between the subject property and the undeveloped commercial area, and that street is a natural barrier to further encroachment of F-commercial. It is our conclusion that the trial court did not misapply the law.

Finally, we would point out that when the homes were built in Foxcroft and Wilton Heights, the subject property was zoned as presently, A. Therefore the builders were entitled to consider that factor. Also, we would point out that "rezoning cannot be justified solely on the ground that it is necessary to put a particular piece of property to its most remunerative use." *Tate* v. *Malvern,* 246 Ark. 316, 438 S. W. 2d 52 (1969).

Affirmed.

HOLT, J., not participating.

BYRD, J., concurs.