W. C. McMINN CO., Inc. *v.* CITY of Little Rock and Calvin BIGGERS et al

74-92                                        516 S.W. 2d 584

Opinion delivered December 23, 1974

*Stubblefield & Matthews,* for appellant.

*Joseph C. Kemp,* City Atty., by: *David Henry* and *Plegge, Lowe & Whitmore,* for appellees.

*Charles Mott Jr.* and *Walker, Kaplan & Mays, P.A.,* and *John M. Bilheimer,* for intervenors-appellees.

*H. Clay Moore,* for Quapaw Quarter Association, *amicus curiae.*

*Darrell D. Dover* and *House, Holmes & Jewell,* for Little Rock and North Little Rock Board of Realtors, *amicus curiae.*

DAN M. BURGE, Special Justice. This is a zoning case involving a total of nine and one-half (9 ½) lots owned by the Appellant, W. C. McMinn Co., Inc., out of a total of twelve (12) lots in Block 206 of the original City of Little Rock, which block is located between 15th and 16th Streets, Broadway and Arch Streets, in the City of Little Rock.

The North side of Block 206 adjoins and is immediately adjacent to the south boundary of the Central Little Rock Urban Renewal District. There are numerous lots along Broadway used and zoned as F Commercial as well as on other streets within the immediate area of Appellant's property. The south half of the adjoining block facing Broadway and within 200 feet of the southeast corner of

Appellant's property is used commercial as is the entire west half of the block adjoining Appellant's property on the west side. There are service stations located on Broadway within 300 feet of Appellant's property, both to the north and to the south. There are also numerous vacant and undeveloped lots in the immediate area of Appellant's property.

Appellant commenced the acquisition of its lots in 1967 and purchased the last lot in 1972, all of which purchases were made after this Court handed down decisions in 1964, through 1966, approving F Commercial Zoning on South Broadway in this area. Prior to Appellant's purchase, said lots had various zoning classifications. Before purchasing its largest and most expensive single tract from the Third Baptist Church at a cost of $135,000.00, Appellant required and the church did join with Appellant in obtaining rezoning of all of the church's and Appellant's property in Block 206 to F Commercial in February 1971. Thereafter, Appellant renovated the church property for commercial use at a cost of $100,000.00 and leased it to a tenant with usage clearly within the F Commercial classification. In 1972, Appellant purchased its last lot in Block 206 for a total investment of approximately $350,000.00. It requested that this last lot be rezoned F Commercial, but the City refused, and the same was classified E-1 for quiet business use.

At the time of the 1972 application and hearing, the City Board of Directors requested the City Planning Commission to make a land use study of the South Broadway area from 14th Street to the North to Roosevelt on the South, Louisiana Street on the East to High Street on the West. The Planning Commission then reduced the area of its study to include a 63 block area bounded by 15th Street on the North, Roosevelt Road on the South, Center Street on the East, and the alley line between Chester and Izard Streets on the West. Appellant's property in Block 206 being located on the West side of Broadway between 15th and 16th Street is in the extreme North edge of the study area. In February 1973, following the Planning Commission's Study, the City adopted Ordinance No. 12,739 reclassifying and rezoning various properties in the South Broadway study area whereby all of Appellant's property in Block 206 was rezoned from F

Commercial District to E-1 Quiet Business District over its objections.

Appellant then filed suit in the Pulaski Chancery Court seeking to restrain and enjoin the Appellee City from denying its use of its property for F Commercial purposes, alleging that the action of the City in rezoning its property was arbitrary, unreasonable,. capricious and unconstitutional as applied to Appellant. The Trial Court denied the relief requested and Appellant brings this appeal.

Prior to the trial in the Pulaski Chancery Court, and over Appellant's objections, certain intervenors, who were property owners within the 63 Block area, were permitted to file interventions opposing the relief sought by Appellant. They have also filed a separate brief and argument in this appeal. We hold that this participation was not an abuse of the Chancellor's discretion, as such interventions have been approved in other zoning cases. *Fields* v. *City of Little Rock,* 251 Ark. 811, 475 S.W. 2d 509.

We have also been favored with excellent amicus curiae briefs and arguments filed by the Little Rock and North Little Rock Board of Realtors, Inc. in support of the Appellant and in behalf of the Quapaw Quarter Association in support of the Appellee. These briefs and arguments have been considered by the Court.

Twenty-six (26) witnesses testified in this trial and numerous and voluminous exhibits were introduced into evidence. It would unduly prolong this Opinion to separately summarize the testimony of each witness or separately discuss each exhibit. Accordingly, after carefully reviewing all the evidence, we will merely summarize same as it applies to each party's contentions and the applicable law.

Between 1960 and 1970 the census records for the City of Little Rock revealed that the South Broadway area included in Ordinance No. 12,739 decreased 11.1% in population while the City as a whole increased 23%; owner occupied property in the area was reduced 20.9% while for the City as a whole there was an increase of 41%; tenant occupied

property in the area increased to 74.2% while for the City as a whole tenant occupied property was only 40%; vacancy rate increased in the area to 15.4% while for the City as a whole it was only 6.6%; and employment, income, school age children and other factors reflect similar comparisons.

Numerous witnesses in behalf of the Appellant and Appellee testified to the effect that the area continued to be a declining neighborhood in the twilight zone or transition period which was obviously depressed with a high vacancy rate. They further testified that practically all of the building activity in the area was for the renovation of existing homes into multiple apartments and rooming houses and that there were no new family dwellings being constructed in the area, with the area adjacent to Appellant's property becoming progressively undesirable for single family dwellings. Testimony further revealed that when an existing home or apartment building burned or deteriorated to the point it could not be used the property normally remained vacant or undeveloped.

The testimony from witnesses for both Appellant and Appellee clearly revealed that this trend evidenced by the census reports continued after 1970 and up until the time of the trial of this cause. In fact, Appellees' own witnesses, Mr. Russell McLean, Chairman of the Little Rock Planning Commission, Mr. Jim Finch, a member of the Department of Community Development Staff, and Mr. Donald Venhaus, a Director of the Department of Community Development, all testified to the fact that the neighborhood adjoining Appellant's property continued as a declining or depressed area with high vacancy rates, approximately two and one-half times that of the City of Little Rock as a whole.

Mr. Russell McLean, Chairman of the Little Rock Planning Commission and Appellees' own expert witness, further testified that he would favor permitting F Commercial zoning on Broadway Street from 15th to 18th Street, which area includes all of Appellant's property. Other witnesses testified in behalf of the Appellant to the effect that the highest and best use of Appellant's property was for commercial purposes; and that the use of the former Baptist Church property at the time of the adoption of the rezoning ordinance was F

Commercial and after the adoption of said ordinance it became a nonconforming use. Appellant's witnesses further testified that the "rezoning" or "dezoning" of its property reduced the overall value by approximately $100,000.00 and Appellee did not seriously contest these figures nor did it offer any evidence to the contrary. The evidence further revealed that not one of the intervenors or any other property owner in the area objected to the rezoning of Appellant's property to F Commercial in February 1971. Furthermore, the parties conceded in oral arguments before the Court that the rezoning of the property in question to F Commercial classification in February of 1971 was a proper and lawful act on the part of the City as of that time; and, therefore, we have to assume that it was justified under the facts and circumstances then and there existing.

We find that Appellant's property and the area immediately adjacent thereto has not undergone any material change since our prior decisions involving Broadway properties in *City of Little Rock* v. *Andres,* 437 Ark. 658, 375 S.W. 2d 370 (1964); *City of Little Rock* v. *Gardner,* 239 Ark. 54, 386 S.W. 2d 923 (1965); and *City of Little Rock* v. *Miles,* 240 Ark. 735, 401 S.W. 2d 741 (1966).

Furthermore, we have held in numerous decisions that in determining whether or not a zoning ordinance is valid as to a certain litigant's property, it is severable. This appeal involves only Appellant's property and the ordinance as it applies to its property. Our holding in this cause does not affect the validity of the ordinance as it applies to other property that may have been rezoned or otherwise affected thereby in the 63 Block area. *City of Little Rock* v. *Sun Building & Development Company,* 199 Ark. 333, 135 S.W. 2d 582.

The issue is then whether or not the Chancellor's findings that the City Zoning Authorities did not act arbitrarily in rezoning Appellant's property is supported by a preponderance of the evidence. If so, the finding will be affirmed on appeal.

In determining the validity of the 1973 rezoning ordinance as it applies to Appellant's property, we must

emphasize that we have consistently recognized that zoning ordinances are valid as against constitutional objections only by reason of the police power, and further that such ordinance must bear some definite relation to the health, safety, morals and general welfare of the inhabitants of that part of the City affected by the ordinance. *City of Blytheville, et al* v. *Harold Thompson, Sr., et al*, 254 Ark. 46, 491 S.W. 2d 769.

As previously stated, zoning ordinances are valid only by reason of the police power and cannot be arbitrarily enforced. Such ordinances are in derogation of common law and operate to deprive an owner of property of a use thereof which would otherwise be lawful, and should be strictly construed in favor of the property owner. *City of Little Rock* v. *Andres*, 237 Ark. 658, 375 S.W. 2d 370.

This Court, while recognizing that the word "arbitrary" has several definitions, has recognized the following as the most generally accepted usage: "Arising from unrestrained exercise of the will, caprice, or personal preference; based on random or convenience selection or choice, rather than on reason or nature." *City of Little Rock* v. *Parker*, 241 Ark. 381, 407 S.W. 2d 921. Then, we have held that "arbitrary" also means decisive but unreasoned action and that "capricious" means not guided by steady judgment or purpose. *City of Little Rock* v. *Habrle*, 239 Ark. 1007, 395 S.W. 2d 751.

Appellee has admitted that it undertook the land use study in the area involved for the personal preference of overturning previous Supreme Court Opinions permitting spot or strip commercial zoning in the area in question. In this connection we must take note that Appellant's property is one of the largest single tracts in the entire area owned by one person or firm and furthermore that the property is border line property located adjacent to established business zones and property actually being used for commercial purposes. It does not involve what is commonly referred to as "spot" or "strip" zoning.

In rezoning or dezoning Appellant's property in February of 1973, the City of Little Rock has placed a more restrictive use on the property than that permitted in their

February 1971 rezoning without any showing that such action would stabilize property values in the area or otherwise show any change of conditions that would justify this action, especially in view of the fact that Appellant, relying on the previous zoning classification, purchased portions of the property and made substantial additional expenditures and investments in upgrading portions of the property to be used for F Commercial purposes.

We find that over the two year period between February 1971 and February 1973, Appellant, in good faith relied upon its F Commercial zoning, incurred substantial expenses and obligations in upgrading its property without any complaint or objections from the Planning Commission, the City or its adjoining property owners. To uphold Appellee's action would result in a substantial loss of Appellant's investment, making such action inequitable and unjust. *Tankersly Brothers Industries* v. *City of Fayetteville*, 227 Ark. 130, 296 S.W. 2d 412.

Accordingly, we conclude that there was no public necessity or change in conditions affecting Appellant's property between February 1971 and February 1973 that would justify the rezoning of same and that the acts of the Appellees in so doing were arbitrary and capricious with the result that the Chancellor's findings in this particular case as it relates to the Appellant's property are not supported by a preponderance of the evidence and the Decree is accordingly reversed.

It is so ordered.

HARRIS, C.J., and FOGLEMAN, J., concur.

GEORGE ROSE SMITH, J., not participating.

CARLETON HARRIS, Chief Justice, concurring. I agree that the decree of the Pulaski Chancery Court (Third Division) must be reversed and this conclusion is predicated on the fact that not a single intervenor or property owner in the area objected to the rezoning of appellant's property to "F"

Commercial in February, 1971, and of course, this rezoning was entirely lawful and permissible at the time.[1] However, while the majority opinion points out that our holding in this cause does not presently affect the validity of Ordinance No. 12, 739 reclassifying and rezoning various other properties in the South Broadway Study Area (a 63-block area described in the majority opinion), I desire, as far as my individual views are concerned, to emphasize that fact. In *City of Little Rock* v. *Gardner*, 239 Ark. 54, 386 S.W. 2d 923, I dissented to the holding of the majority that the city authorities were arbitrary in refusing to rezone certain property on Broadway from "D" Apartment District to "F" Commercial District. In that dissent, it was stated:

> "The majority apparently depend almost entirely upon the recent case of *City of Little Rock* v. *Andres*, 237 Ark. 658, 375 S.W. 2d 370. That opinion contains language which would appear to hold that no part of Broadway is now suitable for residential purposes, but since *Andres* only actually involved a small area on Broadway, I have considered the 'sweeping language' as to the entire street to be nothing more than *dicta.*"

My views in this respect have not changed, and my position in the litigation now before us is based entirely upon the fact situation set out in the opening sentence of this concurrence.

JOHN A. FOGLEMAN, Justice, concurring. I concur on the sole basis that the action of the city was arbitrary because there is evidence that there was no change in conditions justifying "dezoning" of appellant's property after it was zoned F-1 commercial but no substantial evidence that there was. To me, it follows, as a matter of course, that it would be equally arbitrary to deny the same zoning classification to appellant's subsequently acquired adjoining property.

The occasion for my registering my agreement by separate opinion stems from my feeling that too much weight is being accorded our previous opinions in cases involving property on Broadway in Little Rock. I consider them res

[1] This was two years before the present reclassification ordinance was passed.

451

judicata as to the particular property involved in those cases on the basis of the particular evidence before the trial court in each case. Otherwise, they are only legal, not factual, precedent. To me, evidence showing changes since those decisions is wholly beside the point.