CITY OF LITTLE ROCK *v.* GARNER.

5-2738                                                      360 S. W. 2d 116

Opinion delivered September 17, 1962.

*Joseph C. Kemp,* City Attorney, by *William M. Stocks,* Asst. City Atty., for appellant.

*Barber, Henry, Thurman & McCaskill,* by *Guy Amsler, Jr., Holt, Park & Holt,* by *Jack Holt, Sr.* and *Conley Byrd,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a zoning case. Appellee Garner owns, either directly or through options to purchase, a tract of approximately six acres abutting Cantrell Road (State Highway No. 10) in the western part of the City of Little Rock. The tract has a frontage of approximately 530 feet on the highway, and an average depth of approximately 650 feet; and Mr. Garner desires to develop the tract into a modern shopping center. Three of the Garner lots fronting on Cantrell Road have already been zoned as "F" Commercial; but the remainder of the tract is zoned as "A" One-Family District.[1] After several hearings, as hereinafter to be mentioned, the City Board of Directors of Little Rock denied the application for rezoning. Garner then filed complaint in the Chancery Court and, after a thorough hearing, the Court granted Garner his prayed relief—*i.e.,* the City was enjoined from denying Garner's right to use the tract for "F" Commercial purposes. The City prosecutes this appeal, presenting, *inter alia,* the matters herein discussed.

I. *The Court's Right To Reverse The City's Decision.* Appellant, in urging that this Court should reverse the Chancery Decree and reinstate the action of the City Board of Directors, claims that reasonable minds might differ as to the rezoning; and since there might be difference of opinion, no court should overrule the decision of the City Board of Directors and substitute its opinion for that of the administrative body. This argument necessitates a brief review of the applicable zoning procedure. A landowner applies to the City for rezoning; the application goes to the Little Rock Planning Commission, which studies the application and makes a decision or a recommendation to the City Board of Directors; and the City Board of Directors acts on the application by either grant-

---

[1] The Zoning Ordinance of the City of Little Rock lists thirteen "Districts", as follows: "A" One-Family District; "B" Residence District; "C" Two-Family District; "D" Apartment District; "E" Apartment District; "E-1" Quiet Business and Institutional District; "F" Commercial District; "G" Commercial District; "G-1" Commercial District; "H" Business District; "I" Light Industrial District; "J" Light Industrial District; and "K" Heavy Industrial District. The name of each lettered district tells the use to be made of property in such district.

ing or refusing it, returning it to the Planning Commission, or by other appropriate action. If—as here—the City Board of Directors finally refuses the application for rezoning, then the property owner, having exhausted his administrative remedies, files—as here—a petition in the Chancery Court, alleging that the refusal of the City to rezone is arbitrary and amounts to depriving the landowner of the use of his property for its best purposes.[2]

The Chancery Court hears the case and decides whether the action of the City was arbitrary. In that trial, the burden, of course, is on the landowner to prove his allegations by the preponderance of the evidence; and if the evidence makes a mere question of whether the chancery court thinks it would be fairer to rezone the property, then, of course, the Chancery Court does not substitute its opinion for that of the City.[3] But when—as here—the Chancery Court finds from the preponderance of the evidence that the City acted arbitrarily in refusing the application for rezoning, then, on appeal to this Court, it is a question of whether the Chancery Court finding is contrary to the preponderance of the evidence. That is the question next to be considered, and we have gone into this point in some detail because appellant has urged that there is confusion in the language of some of our cases. Isolated sentences lifted out of context might indicate confusion; but we think a careful study of the cases will show the statements herein to be the governing rules. We

---

[2] Some cases in which such allegations were made and sustained are:
*City of Little Rock* v. *Henson*, 220 Ark. 663, 249 S. W. 2d 118; and *City of Blytheville* v. *Lewis*, 218 Ark. 83, 234 S. W. 2d 374.

[3] This was all discussed in *Herring* v. *Stannus*, 169 Ark. 244, 275 S. W. 321, wherein we said:

"This was a question about which reasonable minds might differ, and did differ sharply as reflected by the testimony in the case, and the ordinance constituted the council as the tribunal to pass upon this question. . . . But this discretion, in so far as a discretion abides, is vested in the council, charged by law with the duty of passing on the question, and does not rest in the courts which review the council's action. *North Little Rock* v. *Rose*, 136 Ark. 298; *Pierce Oil Corp.* v. *Hope*, 127 Ark. 38.

"The question is not what a member of the court might decide if the question were submitted to him as a matter of discretion, but rather is whether it can be said that the council abused its discretion, and we may not say that such was the case unless that fact clearly appears. This we are unable to say."

reiterate what we said in *Little Rock* v. *Henson*, 220 Ark. 663, 249 S. W. 2d 118:

"In the recent case of *City of Little Rock* v. *Hocott*, *ante*, p. 421, 247 S. W. 2d 1012, it is said: 'We have uniformly upheld the finding of the Chancellor on the question as to whether the classification of property by zoning authorities is unreasonable and arbitrary where such finding is supported by the preponderance of the evidence.' Citing *City of Little Rock* v. *Sun Building & Development Co.*, 199 Ark. 333, 134 S. W. 2d 582; *City of Little Rock* v. *Joyner*, 212 Ark. 508, 206 S. W. 2d 446."

II. *Arbitrary Action Of The City.* The Chancery Court found that the City had acted arbitrarily in refusing Garner's application for rezoning, and our problem is to decide whether such finding is against the preponderance of the evidence. A review of the record before us shows the following:

(a) Garner applied to the City on November 15, 1960 for rezoning from "A" One-Family District to "F" Commercial District all of the tract in question that was not already "F" Commercial. The City Planning Commission, after several delays,[4] voted in March, 1961, that the petition for rezoning be denied.

(b) Mr. Garner carried the matter to the City Board of Directors; and on April 3, 1961 it was voted to return the Garner application to the Planning Commission for further study.[5]

---

[4] In December 1960 the Planning Commission deferred action for a "staff study"; in February 1961 the study was filed but no action taken; and in March 1961 the Planning Commission voted to recommend denial of Mr. Garner's application.

[5] The minutes of the City Board of Directors contain the following regarding the Garner application:

"Upon question by members of the Board of Directors, Mr. Julius Breckling, Planner, stated that the Petition had been denied after it was determined from the Zoning Study and Report made by the Staff of the Little Rock Planning Commission of the area in general, that there was sufficient property zoned as Commercial property in this area which was not being utilized for this purpose. Mr. Joseph Kemp, City Attorney, advised members of the Board of Directors that in an earlier court suit in Supreme Court, it had been determined that under Zoning Laws in the State, if a particular piece of property is requested for rezoning to Commercial District, and said property is abutting or adjoin-

(c)   On May 11, 1961 the Planning Commission again voted to deny Mr. Garner's application, giving nine reasons for such denial.[6]

(d)   The application for rezoning again went to the City Board of Directors, where, after a series of hearings, the matter was, on July 5, 1961, returned to the Planning Commission. The minutes of the City Board of Directors on this point are as follows:

"Director Winburn stated that the members of the Planning Commission had not reviewed this Development Plan showing Parking Plans and Traffic Patterns which had been submitted by Mr. Garner, and made the follow-

ing property used as business property, it can be extended and not be denied if proposed use of property is not obnoxious and conforms to other regulations. Upon question by Director Morse, as to what amount of a proposed business building on the property was leased, Mr. Garner indicated that he had signed leases for approximately seventy-five percent of the total square footage of the building. After lengthy discussion on the matter, Director Winburn moved, that the Petition of Mr. Garner for rezoning of this property to 'F' Commercial District be referred to the Planning Commission for prompt reconsideration and study, so as not to delay applicant unnecessarily. This motion was seconded by Director Morse, and adopted. . . ."

[6] There nine reasons are quite interesting.
"1.   This property is not adjacent to an established business district, nor has business been established on the lots zoned 'F' Commercial adjacent to this property.
"2.   The only satisfactory access presently available is from Highway No. 10, and the establishment of commercial uses on this property would create traffic hazards, during the busy time of the day in this vicinity. If future streets were extended to the South from this subdivision, heavy traffic would be extended into a most desirable residential district.
"3.   The land is suitable for other uses and has a most desirable view.
"4.   To rezone this property would result in an extension of strip zoning along Highway No. 10.
"5.   The land slopes sharply to the rear and would not provide a one level commercial development, the commercial development would be encroaching, however, on a future desirable residential area.
"6.   There is ample undeveloped 'F' Commercial property along Highway No. 10 that is located in a much more logical place for the development of districts. This was reflected in the Highway No. 10 Zoning Commercial Study prepared by the staff and Metroplan earlier this year.
"7.   This would be the establishment of a new business district with a total area much larger than the total business development in its vicinity.
"8.   The applicant for this rezoning request made little effort to justify the rezoning of this property, nor was a market analyses submitted.
"9.   The City Attorney's office has advised the Commission that the denial of this rezoning petition, if appealed to the court would be defensible."

ing motion: 'I hereby move that the Petition of D. H. Garner to the Board of Directors asking that certain property along the south side of Highway No. 10 in the City of Little Rock be rezoned from Residential to "F" Commercial be returned to the Little Rock Planning Commission with the request that said Commission review the site plan and all covenants to furnish improvements in connection with the proposed use of said property should it be rezoned. Further, that said Planning Commission furnish the Board of Directors its recommendations on said Petition after study of all matters in relation thereto.' This motion was seconded by Director Blankenship. A roll call was then had on the motion, the result being as follows: Ayes—Directors Winburn, Brown, Blankenship, Morse, and Mayor Knoop—total 5; Noes—Directors Hewitt and Steinkamp—total 2; Absent—none."

(e) The application thus went back to the Planning Commission from the City Board of Directors, the minutes of which, as above copied, reflected that the members of the Planning Commission had not reviewed this development plan, as submitted by Mr. Garner; and yet, on July 6, 1961 (the next day after the Board of Directors' action), the Planning Commission again denied the Garner application, with assigned reasons similar to the nine heretofore copied.

(f) On July 17, 1961, the City Board of Directors finally voted to deny the Garner application for rezoning; and this suit was filed on July 21, 1961.

We have sketched the proceedings in considerable detail in order to show how the Planning Commission assigned first one, and then another alleged reason for refusing Garner's application; and in the trial in the Chancery Court, the City pursued the same tactics. For instance, it was practically conceded by some of the City's witnesses that the Garner property could not be used for "A" One-Family purposes; and the City sought to show that the best possible use of this property was "E-1" Quiet Business District, or "D" Apartment District. "E-1" Quiet Business, includes doctors' offices, clinics,

insurance offices, or any office buildings; and "D" Apartment means a multiple apartment house.

When it was shown by competent witnesses that these uses for the property had been explored and found unfeasible and financially impossible, the City then claimed that the proposed shopping center would create a traffic hazard on Cantrell Road; and this testimony was in the face of testimony that property abutting on Cantrell Road for a distance of a quarter mile west (away from Little Rock) was already zoned as "F" Commercial, and that the property east of and adjacent to the Garner tract was likewise zoned as "F" Commercial; and the Garner tract was almost an island of residential property with "F" Commercial property lying to the east and west of it. It was furthermore shown that the Garner tract could not be used to advantage for residential property, and that the refusal to allow it to be rezoned as "F" Commercial for a shopping center would amount to depriving the landowner of the use of his property, which already bore a commercial valuation assessment on the tax books.

Without detailing all of the evidence, it is sufficient to say that it clearly preponderates in favor of the Chancery Decree, which finds:

"That the aforesaid property lies on and is adjacent to Highway No. 10, and that most of the property in the vicinity along said highway, both to the east and to the west of plaintiff's property, is either zoned or used 'F' Commercial, or both; that said property is undesirable for residential purposes but that it has a high value for commercial purposes, and that its intended use for a community shopping center will not adversely affect the use or value of residential property in the vicinity.

"That the City of Little Rock . . . in refusing to classify the (Garner) property for zoning purposes as 'F' Commercial, is arbitrarily depriving the plaintiff of the use of his property."

The decree of the Chancery Court was correct and is in all things affirmed.