CITY OF HELENA ET AL *v.* JOHN H. BARROW ET UX

5-4067                                           408 S. W. 2d 867

Opinion delivered December 12, 1966

*W. G. Dinning Jr.* and *David Solomon,* for appellant.

*Daggett & Daggett* and *John L. Anderson,* for appellee.

HUGH M. BLAND, Justice. This is an appeal from the Phillips Chancery Court overturning the Helena City Council's refusal to rezone the lots of the appellees from Residential District B to Commercial District C. The property involved is the home of appellees' located on the northwest corner of the intersection of Perry and Columbia Streets in Helena. Perry Street runs east and west as does Porter Street; Columbia Street runs north and south.

In 1957, after public hearings by the Helena Planning Commission and City Council, a zoning ordinance was adopted and this established four districts: Residential A, Residential B—Multiple Family Dwellings,

Commercial C and Industrial D. The dividing line between the B Residential and C Commercial Districts runs westward in the middle of Perry Street in front of appellees' property to the alley in the middle of the block and then turns south away from appellees' property down the alley.

The entire north side of Perry Street, about four blocks in depth northward and beginning two blocks east of appellees' property and westward for several miles, is residential. In the half block immediately across from appellees' property is located a Kroger Store and the other half of the block, being the west half, is residential. In the west half of the block east of the Kroger Store and south of Perry Street are residences and on the east half of this block is the First Baptist Church. On the corner of the block south of Perry Street and a block west of appellees' home is a doctor's office which was in existence at the time of the adoption of the ordinance and another proposed doctor's office is on the west end of this block. The rest of this block contains residences. On the south side of Perry Street west of this last mentioned block nothing exists but residences except for several non-conforming uses sevblocks west which were in existence at the time the zoning ordinance was adopted.

Perry Street from the point in front of appellees' property for some distance is one way for westbound traffic and this is Highway No. 49 which feeds or receives the traffic from the one-way street.

Appellees, in 1963, attempted to have their home rezoned Commercial since they had given an option to sell to D-X Sunray for the erection of a filling station. This was rejected by the Planning Commission and City Council. Then in January, 1965, appellees again petitioned the Planning Commission that their lot be changed to C Commercial. This application was rejected by the Planning Commission as being spot zoning. At the same meeting the Planning Commission recommend-

ed a larger area be made commercial which would include appellees' property and 32 other lots. This larger area would run east and west 132 feet north of Perry Street to Poplar Street, then go a quarter block south of Porter Street and east one and one-half blocks to the alley parallel to Columbia Street, the present west boundary of the Commercial zone. Doctor Barrow presented the recommendation of the larger area to the Council and did not pursue his own request for his individual lot to be rezoned Commercial and which had been rejected.

After a public hearing and a joint meeting with the Planning Commission, the City Council rejected the recommendation of the Planning Commission and refused to rezone the larger area as Commercial.

The parties are not in dispute as to the facts. After the last refusal appellees filed this suit against the City of Helena and the other property owners were allowed to intervene. The cause was heard by the court on September 28 and 29, 1965, and concluded on October 20, 1965. On February 3, 1966 the chancellor rendered a lengthy opinion, made extensive findings and held the action of the City Council to be arbitrary and unlawful in refusing to rezone appellees' property to C Commercial. From this decree appellant and intervenors bring this appeal relying solely on one point:

"The Chancellor's findings are contrary to the preponderance of the evidence, and the actions of the City Council of Helena were not arbitrary and unlawful."

Dr. John Barrow testified, in substance: Since I bought the property the Commercial Zone has been placed to the Alley west of Columbia Street,—the Mississippi River Bridge had not been built. At the time I bought my home the Arkansas Grain Corporation, Arkansas Power & Light Company Plant, Arkansas Chemical Plant had not been built and Perry Street was

a two-way street. The Kroger Super Market had not been built, nor had the M-C Drug Store. The Shell Station had not been built, and the Texaco Station had not been built along Columbia Street. The Federal Building had not been built nor had the First Federal Savings and Loan Building. Dr. Berger had not built his clinic at Beech and Perry Streets. The traffic passing by my house seemed to have increased a great deal, and this is objectionable since there is a stop light at the corner and the heavy trucks have to shift gears, which causes a vibration as well as noise day and night. Oil trucks seem to make more noise. The Kroger Store has created more traffic and activity in front of my house, and they load and unload trucks early in the morning, which is noisy. The new Shell Station is one block south of my house. There has been a gradual encroachment of more buildings, businesses, traffic and litter by my house, and there are hitchhikers because of the stop light. It is not desirable for my family and me to occupy it as a home. There has been considerable change in my community since I bought it, as it is changing from a good residential area to one more suitable for commercial property, and I feel that my house has no value as residential property any more. There are hitchhikers on the corner, and since I am out at night, I am apprehensive about my wife and children living there, and more apprehensive than when I bought the home.

Jerdy Lambert Jr. testified, in substance: Since its organization in 1955, I have been Secretary of the Helena Planning Commission and keep its records. [Witness then detailed the efforts of Dr. Barrow to have his property rezoned.] I have been in the real estate business since I have been out of service in 1952 and handled all types of property, but in the past five years have handled more rural property. From my knowledge and experience I believe that the use to which the Barrow property could best be put was commercial. I personally wouldn't want to live there. I don't think that it is resalable as residential property,

as it is on U. S. 49 with lots of heavy trucks going past. The trend of commercial growth is west because of the geography of the community. The River is on the East and the North is a substantial residential area. The South is largely industrial. I have not examined the Barrow property and would hesitate to put a value on it as residential property, but in my opinion it is not desirable as residential property. Traffic is a factor in Dr. Barrow's property not being suitable as residential. Other factors are its proximity to Kroger's and this is one of the main streets leading out of town. These are all the factors affecting my opinion. From Perry to Walker Street and College to Franklin surrounding the north of the Barrow property there are nothing but residences or multiple dwellings, and no businesses. These residences are good. In my opinion the rezoning of Dr. Barrow's property will not affect adversely these residences any more than the present Kroger Store does.

Joe C. Brady testified, in substance: I am Manager of the Helena Cotton Oil Company and Delta Fertilizer Company. These businesses are on the south side of town, off of Highway No. 49. Helena Cotton Oil Company processes cotton seed, and it is the largest mill in Arkansas. In the 1964-65 season we processed 88,000 tons of cotton seed, which comes to our mill mostly by trucks, but some by rail. Of these, 22,750 tons came from below Helena, which would not come by Dr. Barrow's property, and 2,198 tons by rail, which would not, but the balance of 63,000 tons would have come within a block of his house. The loads would average 11.8 tons per truck, and would be of all types of vehicles from 5 ton loads to as large as 22 ton loads. To leave Helena these trucks would go out Perry Street past Dr. Barrow's property. In 1954 we processed 57,000 tons.

C. V. Barnes testified, in substance: I am a Realtor living in Little Rock, Arkansas, and am a real estate consultant and a certified real estate appraiser and belong to a number of Associations connected with my profession. I examined the records of the Helena Planning

Commission and have gone over the areas involved. I obtained maps and familiarized myself with Dr. Barrow's property, and I am thoroughly familiar with Helena and the surrounding territory. In my opinion as Helena grows, the commercial growth will continue and extend many blocks past the present approximate limit of the commercial area, which would be either Beech or Poplar Streets. The trend is for commercial growth of a community to follow the communities general growth, which Helena has been required to do by topography and other factors. In this the residential area growth grows first and then follows the commercial area. In my opinion the Barrow property is located in a transitional neighborhood, which is one which formerly had a residential character, but because of the development in the community has reached commercial character. In my opinion if the community is going to continue to grow and keep up with the times, the Barrow property and that surrounding it should be rezoned commercial uses, and not to rezone the Barrow property is not based on sound planning principals. If the proposed line of zoning is adopted to the rear of the Barrow property and a filling station was placed on the Barrow property, I do not think that it would have too much effect on the residences to the north end of that half block because of the buffer value of the vacant lot in between. Spot zoning is zoning of an area as an island. If the Barrow lot is zoned commercial, this would not be spot zoning since it isn't an island, but would be an extension to the currently existing zoning area. I think that growth would follow as the Barrow property is rezoned for commercial purposes. In my opinion there is a commercial need for the future growth of the community to rezone the Barrow property, and there would be no detriment to the property owners immediately north of the area.

A number of residents of the neighborhood testified in opposition to the rezoning. F. L. Thompson, who lives just west of Dr. Barrow's property in one of the historic old homes of Helena, objected strenuously that it would increase traffic and noise. Clancy King, who lives

in Waverly Woods, Mrs. Retta G. Solomon who lives at 726 Columbia Street, Mrs. Henry H. Rightor who lives at 720 Beech Street, Mrs. H. M. Houston who lives at 715 Beech Street, Reverend H. H. Rightor Jr. who lives at Owing Mills, Maryland but owns property just north of Dr. Barrow, objected to the rezoning. O. D. Butterick, who lives at 623 Beech Street with his wife, objects to rezoning Dr. Barrow's property since it would decrease the value of his property.

The members of the Planning Commission testified that they rejected the rezoning because they believed it to be spot zoning.

In a case of this kind the chancellor should sustain the city's action unless he finds it to be arbitrary. No matter which way the chancellor decides the question, we reverse his decree only if we find it to be against the preponderance of the evidence. *City of Little Rock* v. *Garner,* 235 Ark. 362, 360 S. W. 2d 116 (1962).

The evidence clearly establishes that Dr. Barrow's property is on the periphery of an established business district. The testimony is that the commercial growth of the city is now and inevitably will in the future be westwardly. The city administrative authorities have recognized this by granting petitions for commercial use of property in the residential area in the vicinity of the Barrow property, *i. e.,* the Etoch and Coolidge lots and the Bell lot. They also proposed a plan to rezone a larger area, including the Barrow property.

In the landmark case of *City of Little Rock* v. *Pfeifer,* 169 Ark. 1027, 277 S. W. 883, we held:

"* * * As the size of the business district grows, it ceases to be a residence district to that extent within the purview of the zoning ordinance, and any attempt on the part of the city council to restrict the growth of an established business district is arbitrary. When a business district has been rightly

established, the rights of owners of property adjacent thereto cannot be restricted, so as to prevent them from using it as business property. It is the contention of the protestants that residence property adjacent to a business district becomes, on that account, less desirable for residence use. Conceding this to be true, and it is undoubtedly true, in a sense, that property thus located is not as desirable as residence property, it demonstrates the right of owners of borderline property between residence and business district to use their property for either purpose. In other words, if it become less desirable for residence property because of its proximity to the business district, they have the legal right, without interference, to use it for business purposes.''

This is the rule of law governing this case and has been cited and reaffirmed in the following cases: *McKinney* v. *City of Little Rock,* 201 Ark. 618, 146 S. W. 2d 167; *City of Little Rock* v. *Bentley,* 204 Ark. 727, 165 S. W. 2d 890; *City of Blytheville* v. *Lewis,* 218 Ark. 83, 234 S. W. 2d 374; *City of Little Rock* v. *Joyner,* 212 Ark. 508, 206 S. W. 2d 446 and *City of Little Rock* v. *Garner, supra.* The above cases have similar fact situations and are analogous with the facts in the case at bar.

In *City of Little Rock* v. *Faith Evangelical Lutheran Church,* 241 Ark. 187, opinion delivered October 17, 1966, it was said:

"It is not likely, in any rezoning case, that a solution could be reached which would afford complete equity and satisfaction to all parties. As in other matters, the welfare of all concerned must be taken into consideration. We stated in *Downs* v. *City of Little Rock,* 240 Ark. 623, 401 S. W. 2d 210: 'The composition of the entire area must be taken into consideration, and it is undisputed that both the area to the west of Beechwood for several blocks, and the area north of Markham and Beechwood for a similar distance are completely residential. The

benefit to a few individuals cannot be allowed to override the best interests of the residents of the overall area. The Planning Commission has apparently spent long hours in rezoning property in the city of Little Rock with the view of establishing a long-range program, one that will best fit the needs of an expanding city in future years.' "

After all, the chancellor had the opportunity to hear and observe the witnesses and was in a better position to evaluate their testimony than we are.

From a review of the entire record in this case we cannot say that the decree of the chancery court is against the preponderance of the evidence. The decree is, therefore, affirmed.

Affirmed.

GEORGE ROSE SMITH, J., concurring.

GEORGE ROSE SMITH, Justice, concurring. I am compelled to concur in the result for precisely the same reason that I have stated in *Arkansas State Highway Commission* v. *Jerry*, also decided today.