CITY OF WEST HELENA *v.*
RAPHAEL G. DAVIDSON ET UX

5-5493                                                464 S. W. 2d 581

Opinion delivered March 22, 1971

*Garland Q. Ridenour,* for appellant.

*David Solomon,* for appellees.

FRANK HOLT, Justice. Appellees petitioned the appellant's planning commission to rezone their lot from Residential (R-B) to Neighborhood Commercial (N-C). The commission refused to change the classification, and appellant's city council approved the commission's action. The appellees then proceeded in chancery

court. This appeal results from the chancellor's finding that the action of the city council was arbitrary, and from his order directing appellees' property to be changed to the requested "Neighborhood Commercial Zone." In its first two points for reversal, appellant asserts that the chancellor erred by substituting his judgment for that of the zoning authorities and that the chancellor's findings are contrary to the preponderance of the evidence. We do not agree.

The facts in the case appear to be undisputed with reference to the nature of the realty surrounding the subject property. This vacant lot is being purchased by the Davidsons, appellees, from appellee Katz with the intention of constructing a drug store thereon. It is located on the north side of Oakland Avenue (U. S. Highway No. 49), which is the main thoroughfare between Helena and West Helena and one of the most heavily traveled roads in the State, accommodating approximately 15,000 vehicles a day. The lot is situated about one block inside the east central corporate boundary of appellant city and the contiguous boundary of the western most portion of the City of Helena. The lot constitutes the far eastern parcel of a residential (R-B) district. Immediately adjoining it to the west is a church with a complex of buildings. Next are two vacant lots, then a 50-foot-wide street or avenue which is not open at the highway entrance. Then, continuing to the west on the north or same side of the highway (Oakland Avenue), are found residences in a different classification, Residential (R-A), leading up to an elementary school. Across the street from the church and a small portion of appellees' property is a residence; then, continuing on further west on this south side of the highway are two vacant lots, the Helena Country Club, and residences in R-A classification, except for a service station. This appears to accurately describe the type of property which is on both sides of the highway to the west of appellees' vacant lot.

Immediately to the east of appellees' property on the north side of the highway there is a bowling alley.

Adjacent to this commercial business is a high school and junior high school complex of the Consolidated Helena-West Helena School System. Next to the schools it appears that appellant recently rezoned some land to the east for commercial purposes to permit construction of a shopping center. Directly across the highway from appellees' property is located the Arkansas Power & Light Company's main office, storage and maintenance building, and east of this property there is a drive-in food and drink establishment. On the eastern line of this drive-in is found the corporate boundary of West Helena and Helena. Further eastward on both sides of the highway, there are various business establishments located on commercially zoned property extending for almost a mile into the City of Helena.

Appellee Mr. Davidson, a pharmacist, rents a building in Helena where he owns and operates a drug store about one block east of that city's corporate line, or approximately two blocks from the vacant lot he seeks to have rezoned in order to construct a drug store building thereon.

Appellant's witnesses, which included members of the city council and of the planning commission and four property owners, testified that the rezoning of appellees' property from Residential (R-B) to Neighborhood Commercial (N-C) would disturb the planning program and not be in the best interest of the City; that rezoning would depreciate or adversely affect the value of residential property to the west which is in the classification Residential (R-A); and that the church should not be considered a buffer zone between appellees' property and the area to the west. There was evidence that in the past several efforts to rezone this property were unsuccessful. Evidence was also adduced that the proposed rezoning would increase already existing traffic problems which, as one witness testified, was the basic reason the people in the area were objecting. It was admitted by appellant that the character of appellees' property is "low residential" which is described as suitable for

multi-dwelling houses, such as duplexes. One of appellant's witnesses testified that he would not build a home there. It appears that a multiple dwelling sould be restricted to a height of 35 feet, whereas a building zoned for Neighborhood Commercial (N-C) use could be no more than 26 feet in height. As previously indicated, it is admitted that the whole area east of appellees' property on both sides of Highway No. 49 consists of commercial establishments for a considerable distance.

The church, which is adjacent to appellees' property, found it necessary to purchase a part of appellees' property in order to provide a better driveway and access to the highway to accommodate its 350 members. The church now has an Education Building consisting of thirteen classrooms, three offices, two restrooms, an equipment room and a kitchen.

An expert city planner, associated with the University of Arkansas, who assisted appellant's planning commission and whose contract was completed in 1962, recommended that appellees' property be zoned Residential (R-B) and the property west of the church be classified as Residential (R-A). He testified that there appears to have been a number of changes since 1962 and that from his observation, the tract of property adjacent to the subject property appears to be commercial in nature. The church has been built since the completion of his contract in 1962 and the nearby school has grown. He stated that he did not consider the church as a buffer zone and that a residential classification, duplex type, is still appropriate for appellees' property and consistent with city planning. He finally stated that he did not have an opinion whether the subject property would be commercial in nature. He observed that Neighborhood Commercial is a very limited classification and is restricted to one-story buildings.

Among appellees' witnesses was a local licensed realtor and real estate broker who lives in West Helena and has had many years experience in his profession.

He was for several years a member and official of the City's Planning Commission, beginning in the early 1960's, and is familiar with appellees' property and the city's planning and zoning ordinances. It was his opinion that appellees' property was not suitable for residential uses, nor could ever be used for that purpose; that the highest and most compatible use of the property was for Neighborhood Commercial purposes for a retail store; that this type of use would not adversely affect or depreciate the value of property to the west; and that the residence diagonally across the highway from appellees' property is "sitting back" about 250—300 feet from the highway and is within 50—75 feet of the Arkansas Power & Light Company's property. According to him, it would not be spot zoning to permit the requested neighborhood commercial use. He also testified that the church, in addition to being a buffer zone, could be considered merely as "an extension of a commercial zone." Another well-known realtor and an expert who is experienced in zoning and planning programs was of the view that the property was definitely commercial in character inasmuch as it is located in and adjacent to an established commercial business area; that good planning required the use of this property for neighborhood commercial purposes; and that such usage would not depreciate the value of any residential property in the area. In his view, the proposed use of the property as a drug store would not increase the traffic hazard on this heavily traveled highway (15,000 vehicles per day). According to him, a Neighborhood Commercial (N-C) classification or a commercial use of a low character would conform to the highest compatible use of the subject property and would fit into the city's planning program. Also, the church is a perfect buffer between the residential district (R-A) and the subject property. Because of the proximity of the subject peoperty to the boundary line of Helena-West Helena, it was his opinion that good planning required zoning by area rather than by political boundaries and that the use of the property in both cities in proximity to appellees' property should be considered for zoning purposes.

In *City of Little Rock* v. *Pfeifer,* 169 Ark. 1027, 277 S. W. 883 (1925) we said:

> "*** any attempt on the part of the city council to restrict the growth of an established business district is arbitrary. When a business district has been rightly established, the rights of owners of property adjacent thereto cannot be restricted, so as to prevent them from using it as business property."

We think this language is applicable to the case at bar in view of the fact that appellees' property is practically surrounded by established commercial activities which border on both sides of a major highway having a traffic count of approximately 15,000 vehicles per day. Furthermore, appellees have specified the intended use of the property. cf. *City of Little Rock* v. *Parker, et al,* 241 Ark. 381, 407 S. W. 2d 921 (1966).

As stated previously, the facts are not disputed as to the present uses of the properties in the area. The dispute presented to the chancellor largely pivoted around the opinions of the witnesses representing opposing views as to the highest compatible use of the subject property. In such a situation we aptly said in *City of Helena* v. *Barrow,* 241 Ark. 654, 408 S. W. 2d 867 (1966):

> "In a case of this kind the chancellor should sustain the city's action unless he finds it to be arbitrary. No matter which way the chancellor decides the question, we reverse his decree only if we find it to be against the preponderance of the evidence."

In the case at bar, the chancellor heard the witnesses and evaluated their conflicting testimony and other evidence; we are unwilling to say that his findings are against the preponderance of the evidence. Nor do we find any merit in appellant's contention that the chancellor erred in considering evidence of commercial uses of nearby property within the corporate limits

of the adjacent City of Helena. Appellees' property is within one block of this bordering city, and certainly it must be said that the commercial use of other property situated within one block of their property would have an effect upon its highest compatible usage. In fact, appellant's expert, who by contract assisted in the planning program, testified that the planning project as to land use was conducted in conjunction with the planning commissions of both cities and that there is a very close correlation between land use planning and zoning ordinances.

The decree is affirmed.

HARRIS, C. J., and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent because I think that the chancery court erred in holding that the action of the city authorities was arbitrary. I think the majority opinion is in error in ignoring decisions more recent than that on which it places its principal reliance—*City of Little Rock* v. *Pfeifer*, 169 Ark. 1027, 277 S. W. 883. In commenting on this case in *City of Little Rock* v. *Parker*, 241 Ark. 381, 407 S. W. 2d 921, we said:

> The statute in force at the time of *Pfeifer* was Act 6 of the Second Extraordinary Session of the General Assembly of 1924, and cities of the first class were authorized to establish zones limiting the character of buildings erected thereon. There were only three zoning classifications under that Act, one, that portion of the city where manufacturing establishments might be erected, two, those portions of the city where business other than manufacturing, might be carried on, and finally, those portions of the city set apart for residential purposes. Act 186 of the Acts of the General Assembly of 1957, Ark. Stat. Ann. § 19-2825 (Supp. 1965) is a comprehensive act authorizing cities of the first and second class to adopt and enforce plans "for the coordinated, adjusted and harmonious

development of the municipality and its environs."
The purposes of the act are set out in Subsection
a. as follows:

"The plan or plans of the municipality shall be
prepared in order to promote, in accordance with
present and future needs, the safety, morals, order,
convenience, prosperity and general welfare of the
citizens; and may provide, among other things,
for efficiency and economy in the process of de-
velopment, for the appropriate and best use of
land, for convenience of traffic and circulation of
people and goods, for safety from fire and other
dangers, for adequate light and air in the use and
occupancy of buildings, for healthful and con-
venient distribution of population, for good civic
design and arrangement, for adequate public
utilities and facilities, and for wise and efficient·
expenditure of funds."

The Act itself consists of nine lengthy sections,
including approximately forty sub-sections, and
composing fourteen pages (Acts of Arkansas 1957),
all dealing with the preparation of plans for the
orderly growth of a city. * * * Section 8 provides
that the provisions of the Act shall be construed
liberally.

It is apparent that the passage of Act 186 of 1957,
to some degree, necessarily modified our holding
in *Pfeifer,* for a strict and literal interpretation of
all the language in that case would certainly re-
sult in nullifying the effort by a city to coordinate
development of lands, and, more than that, in
effect, would nullify Act 186. The right and re-
sponsibility for classifying the various areas in
the city are with the zoning authorities, and their
decision will only be disturbed if it is shown
that they acted arbitrarily.

In *City of Little Rock* v. *McKenzie,* 239 Ark. 9,
386 S. W. 2d 697, we stated that we must uphold the
decision of the zoning authorities unless we can say

that it is arbitrary and capricious, i.e., without *any* reasonable foundation. A chancery court may declare a zoning ordinance void when, and only when, it can say that the action of the authority having power to zone, is clearly unreasonable, arbitrary and capricious or an abuse of discretion. *Economy Wholesale Co.* v. *Rodgers,* 232 Ark. 835, 340 S. W. 2d 583; *Herring* v. *Stannus,* 169 Ark. 244, 275 S. W. 321; *City of Little Rock* v. *Garner,* 235 Ark. 362, 360 S. W. 2d 116; *Olsen* v. *City of Little Rock,* 241 Ark. 155, 406 S. W. 2d 706; *City of Little Rock* v. *Joyner,* 212 Ark. 508, 206 S. W. 2d 446; *City of Little Rock* v. *Pfeifer,* 169 Ark. 1027, 277 S. W. 883. In the sense used in these cases, we have said that "arbitrary" means "decisive but unreasoned," or "arising from unrestrained exercise of the will, caprice or personal preference, based on random or convenient selection or choice, rather than on reason or nature" and that "capricious" means "not guided by steady judgment or purpose." *City of North Little Rock* v. *Habrle,* 239 Ark. 1007, 395 S. W. 2d 751; *City of Little Rock* v. *Parker,* 241 Ark. 381, 407 S. W. 2d 921.

In *Marling* v. *City of Little Rock,* 245 Ark. 876, 435 S. W. 2d 94, we said:

> We perceive that the chancellor was impressed, as are we, with an abundance of evidence pertaining to the danger of spot zoning. That danger was emphasized where, as here, there is no existing barrier to prevent the spreading of rezoning into the exclusively residential area to the north. Those residents have a stake in this case and are entitled to consideration. Appellant's exercise of her rights of property must be recognized; however, we held in an early zoning case that her enjoyment of its use may be reasonably restrained so as not to cause injury to the property rights of her neighbors. See *Herring* v. *Stannus,* 169 Ark. 244, 275 S. W. 321 (1925). This is true even though, as was said in *Downs,* the best and most remunerative use of the two lots in question might be for quiet business.

In *Downs* v. *City of Little Rock*, 240 Ark. 623, 401 S. W. 2d 210, we said:

> The benefit to a few individuals cannot be allowed to override the best interests of the residents of the overall area. The Planning Commission has apparently spent long hours in rezoning property in the city of Little Rock with the view of establishing a long-range program, one that will best fit the needs of an expanding city in future years.
>
> *   *   *
>
> Probably, it would be most difficult to determine petitions for rezoning in any of the old additions without encountering individual cases of hardship, but the line must be drawn at some point. If this property were rezoned, where would the rezoning end? If these two lots are to be placed in a different category than "B" Residential District, why should not the lot just north of Lot 12 be placed in the same category—and so on *ad infinitum?*

In *Tate* v. *City of Malvern*, 246 Ark. 316, 438 S. W. 2d 52, we said:

> * * * home owners who have relied on residential zoning are entitled to consideration and the use of a particular tract may be reasonably restrained so as not to cause them injury; and rezoning cannot be justified solely on the ground that it is necessary to put a particular tract to its most remunerative use.

In the same case, in speaking of spot zoning, we said:

> The decided weight of authority is found in Yokley, Zoning Law and Practice, § 8-4, third edition (1965). It is there stated that the council can so amend a zoning ordinance when the character of a zoned area has become so changed that a modi-

fication is necessary to promote public health, morals, safety, and welfare; but mere economic gain to the owner of a comparatively small area is not sufficient cause to amend.

In *City of Little Rock* v. *Gardner*, 239 Ark. 54, 386 S. W. 2d 923, we said:

One of the main purposes of zoning and rezoning is to stabilize property values in a neighborhood, thus encouraging the most appropriate use of the land.

In *City of North Little Rock* v. *Habrle*, 239 Ark. 1007, 395 S. W. 2d 751, we said:

It is undisputed that appellee bought her property after the area was zoned. No doubt it will be a financial disadvantage for appellee if she cannot operate a beauty shop on her lot, but we do not understand this is necessarily any indication the Zoning Authorities acted arbitrarily when they refused to let her do so. In the McKenzie case, supra, we indicated we were not insensitive to hardships which sometimes result in a case of this kind, but said: "Yet in every case such as this one a similar loss in property value must be suffered by one side or the other."

The Walter Morris home, valued at $75,000, and admittedly one of the finest in West Helena, is located immediately across the street. Numerous residences that are well maintained and exhibit pride of ownership are in the vicinity. A real estate man called to testify on behalf of· appellees stated that changing the zoning of this property to neighborhood commercial could be spot zoning.

Raphael G. Davidson, one of the appellees, testified that traffic on the street, which is Highway 49, is high. He numbers his customers at between 100 and 150 and states that the hours his business would be open are 9:00 a.m. to 8:00 p.m. He was prompted to buy the

property because of its location, *knowing* the status of the zoning classification. He admits a traffic problem on Highway 49, but did not think that his business would have an effect upon it. At one time, he thought of the development of the property for residential purposes but abandoned the idea because his experience with rental property was not profitable, and he considered the expense great. He admitted he had not gone into any depth to determine these questions nor made a survey as to feasibility. He also considered the price of the property for development for residential purposes.

C. V. Barnes, a real estate consultant of Little Rock, called as an expert witness by the appellees, stated that spot zoning is poor practice. O. B. Porter, building official and plumbing inspector for West Helena for nine years, testified about building permits issued. One · of them was for the construction of the A. E. Raff. home built in 1965 in the vicinity. He admitted that there had been considerable enlargement to the school 300 or 400 yards north of the highway and isolated from the property in question. Porter testified that the present zoning ordinance of the City of West Helena was adopted November 22, 1966.

R. E. McLendon, an alderman for the past 11 years, was present at the City Council meeting the date that the Davidsons' petition for rezoning was heard. The recommendation of the Planning Commission to the City Council was that the zoning not be changed from the R-B Zone which permitted multiple dwelling. The vote of the Council rejecting the petition was unanimous. His reason for voting to reject was because the Planning Commission had studied the problems, and the city officials were trying to have an orderly growth of the city. He stated that since the adoption of the zoning ordinance only one piece of property had been rezoned to neighborhood commercial. That was the Gann property about three blocks away. It was a neighborhood grocery store at the time of the adoption of the ordinance, which made its use nonconforming. It was across the street

from a sawmill, and he could recall no opposition by the neighbors. This witness had operated the Pure Oil Station which was also a nonconforming use. It was his opinion that the rezoning of the property would increase the traffic.

James P. Baker, who had been a member of the first Planning Commission for several years, returned to it to serve as chairman in May 1958, and has served as such since that time. He said that in 1958 the city entered into a contract with the Planning Division of the University of Arkansas under the direction of Professor William S. Bonner. One of the purposes in the study conducted under that contract was to consider the future growth and development of the city so that it could be guided and directed in order not to victimize the city. The second phase of the contract with the University began about 1960, according to Baker, but in the meantime the Planning Commission had worked with the Research Planning Division of the Arkansas State Highway Department for a study of major streets and the future of both Helena and West Helena. He said that members of the Planning Commission actively engaged themselves in the planning. He felt that the zoning classification at the time the ordinance was adopted was sound and that it was in accordance with the master plan. He recalled six drafts of the zoning ordinance and that the real estate board was consulted. He referred to Highway 49 as a major artery between Helena and West Helena, carrying approximately 15,000 cars per day which he said affected the planning and zoning of any area. He stated that West Helena did not have very much property zoned neighborhood commercial, because there just wasn't any demand or need shown for additional neighborhood commercial property. Baker testified that the Planning Commission conducted public hearings on the Davidson application, which was presented by the attorney for appellees and then referred to the zoning committee, which made a study and recommendation to the Planning Commission. The Planning Commission then held a public hearing, adjourned the meeting for a 10-day period and dis-

cussed the matter again. The Planning Commission vote was unanimous. Baker said that a previous owner's request to rezone the property to commercial had been denied.

W. C. Dempsey, a member of the Planning Commission, considered the traffic problems in the area and considered that a business in that area would multiply the traffic. He also stated that there was a well-established residential area contiguous and adjacent to the property which he took into consideration. It was his opinion that the proposed zoning change would tend to reduce the value of the property in that area. He also felt that traffic to the business created some noise which would have a tendency to disturb worship services at the nearby Church of Christ. He could not see that rezoning this property would do anything other than decrease the value of the surrounding property, and tend to make a commercial district creep into the area. It was his opinion that the property was more desirable and adaptable for multifamily dwelling.

J. C. Nixon, another member of the Planning Commission, testified that the last request of the former owner for rezoning was denied on November 22, 1966. It was his recollection that the public hearing on the Davidson request was held on June 26, 1969. He explained the bowling alley as being in a location that the Planning Commission could not, under the law, deny a permit, that the Kream Freeze had been in its location for 20 years and that the Planning Commission had no control over the Arkansas Power and Light Company property. Robert W. Fey, another member of the West Helena Planning Commission, testified that once you establish the line between zones you have got to hold it and that changing this zoning would be the beginning of a hedging into the residential areas, a factor which he considered an important reason to vote to deny the request for rezoning. He too thought that the Davidson property was suitable for multiple houses.

Walter Morris testified that the principal reason for bringing the Morris property into the city limits was the desirability of the protection of a zoning ordinance, thinking that there would not be further encroachments in the residential area where their homes were constructed. Mrs. Lenora Hornor Morris protested because continued encroachments into the area would decrease the value of their property where she had maintained her home with the idea that the residential zoning would be maintained. William Bonner, a City Planner associated with the University of Arkansas since 1950, recommended the zoning of this tract of land and stated that if this property was used for commercial purposes then the only access would be from Andrews Street which would cause a traffic problem. He stated that the only thing the city could have done with reference to the zoning of the bowling alley was to make it a nonconforming use or to zone it as it was. It was his opinion that the proper use for the Davidson lot is residential, in view of the traffic and the neighborhood.

While it is true that we only determine the preponderance of the evidence, the question to which the determination must be related is whether or not the Planning Commission and the City Council acted arbitrarily and capriciously. It seems to me that this evidence shows anything except an arbitrary and capricious action, as we have defined it.

Of course, the courts cannot substitute their judgments for that of the Planning Commission and the City Council. *City of Little Rock* v. *McKenzie*, 239 Ark. 9, 386, S. W. 2d 697. I cannot help but believe that the learned chancellor fell into error in this respect. In his findings of fact, he stated that, in consideration of the testimony in trying to analyze the proof, he had taken into consideration his own opinions formed by a visit to the area during a month's sojourn in the city in the trial of other litigation and had viewed the premises and noted the activity of the bowling alley, the warehouse and office building of the Arkansas Power and Light Company and the

Dairy Queen in the immediate area as well as the commercial activity on the south side of the highway as it proceeds into the City of Helena. He stated that, in his opinion, the area is highly commercial regardless of how the defendant may zone the area. Of course, we are not able to evaluate what the chancellor saw in determining the preponderance of the evidence.

I would reverse the decree.

I am authorized to state that Harris, C. J., joins in this dissent.