CITY OF JONESBORO, A MUNICIPAL CORPORATION
v. PAUL ARNOLD

73-193 504 S.W. 2d 351

Opinion delivered January 28, 1974

*Warren Dupwe,* for appellant.

*Lee Ward,* for appellee.

J. FRED JONES, Justice. This is an appeal by the City of Jonesboro from a chancery court decree holding that the city was arbitrary in denying appellee Paul Arnold's application to rezone his 11 acre tract of land within the city limits of Jonesboro from R-1 to R-2 classification. On appeal to this court the city contends that the chancellor's finding that the city acted arbitrarily, capriciously and unreasonably in refusing the rezoning request, was contrary to the preponderance of the evidence. We do not agree with this contention.

It appears from the record that there are three classifications for residential zoning in the City of Jonesboro, and separate classifications for commercial zoning. It appears that R-1 represents the highest and most desirable residential classification; that R-2 is the next highest classification and R-3 is the lowest residential classification. The R-2 classification permits apartment buildings while R-1 is confined to single family dwellings. When land is taken into the city limits of Jonesboro, the R-1 classification automatically attaches and the property remains in the R-1 classification until rezoned by the city. It appears that commercial property is likewise classified in three categories as C-1, C-2 and C-3.

The 11 acre tract involved in this case is bounded on the west by Hester Street and on the south by Cherry Street. The record is not clear as to whether Cherry Street has been completely opened along the south boundary line of the property, but the property on the east is bounded by a drainage ditch which extends north more or less parallel with Hester Street for a distance of approximately two-thirds the length of the tract involved, at which point the drainage ditch curves to the northwest and continues as the northeast and north boundary line of the property until it is intersected at an angle by Hester Street. U.S.

Highway 63 runs in a northwest-southeast direction on the northeast side of the drainage ditch, and the drainage ditch is traversed by a bridge from the north end of Hester Street to the highway.

There are three or four lots classified as R-1 between the north end of Hester Street and the appellee's property, but the remainder of the property immediately west of Hester Street and adjacent to appellee's property is zoned R-3. The property north, east and northeast of the appellee's property is zoned C-3. The property south of the appellee's tract is still zoned R-1.

Appellee Arnold first submitted his application for rezoning to the Metropolitan Area Planning Commission. His application was approved and the rezoning was recommended by that body. The matter was then presented to the Jonesboro City Council and the application was denied.

Mr. Aubrey E. Scott, Chairman of the Metropolitan Planning Commission, testified that he is serving his sixth year on the Commission and the Commission approved Arnold's request to rezone his property from R-1 to R-2. He said he considered it to be in the best interest for future development of the city that the application be granted, because the property immediately east of Arnold's property is classified as commercial, and the property across Hester Street immediately west of Arnold's property is in an R-3 classification which is a less restrictive classification than the R-2 classification requested by Arnold. He said the property to the south of the Arnold tract is still in an R-1 classification, and that it was automatically classified R-1 when it was brought into the city limits.

Mr. Ralph King, another member of the Planning Commission, testified that in his opinion it would be to the best interest of the metropolitan area to re-classify Arnold's property from R-1 to R-2.

Mr. Roy Cooper, another member of the Planning Commission, and who is also engaged in general construction, testified that in his opinion the rezoning of Mr. Ar-

nold's property as requested, would be in the best interest for the future development of Jonesboro. He said that insofar as the terrain of the property is concerned, it would support either apartments or residential or commercial.

The appellee Paul Arnold testified that he had owned the property involved for about 15 years; that all the property across the drainage ditch east and north of his property is commercial and he is seeking an R-2 classification in order to build an apartment building on his property. He testified that it would not be economically sound business practice to build one-family homes under the R-1 classification requirements on his property immediately across Hester Street from an R-3 zone. He said that if, and when, Cherry Street is extended along the southern boundary of his property, it would divide his property from R-1 classification south of his property.

Mr. Bill Bowers, superintendent of a construction company and member of the City Council, testified that he voted to deny the request for rezoning because through his past experience as street superintendent for the City of Jonesboro, he knew there was a very narrow wooden bridge across the drainage ditch at the north end of Hester Street, and that Hester Street would be the primary means of ingress and egress to and from the property involved. He said that the bridge had been remodeled but that people in the area had requested street humps in order to slow the traffic down over Hester Street; that it was his opinion that apartment buildings would create more traffic and that it was because of the traffic problem he voted to deny the petition.

On cross-examination Mr. Bowers testified that Hester Street is relatively a residential street but could be widened if someone would give the right-of-way for that purpose. He also admitted that since he had established his attitude in the matter, the bridge from Hester Street to the highway had been repaired and is now "pretty close" to two-way traffic.

Mr. Ralph Strickland, another member of the City Council, testified that because of the petitions and attitudes of the people in the area, together with the traffic

situation requiring speed humps, he just simply had to vote against rezoning the property from R-1 to R-2. He said he did not feel that an apartment building on the land involved would be to the best interest of the city. He said that his constituents in the area expressed to him a feeling that to rezone the property would create traffic hazards and that he had not seen any specific plans as to street development or the size of apartment building Mr. Arnold was planning in the area. On cross-examination he admitted that the property east of the Arnold tract is zoned commercial, but he said that the drainage ditch between the Arnold property and the commercial property could act as a buffer between the two zones.

Bill Bowers, a practicing dentist in Jonesboro and a member of the City Council, testified that the reason he voted to override the recommendations of the Planning Commission was, first of all, the request had been presented to the Commission previously and had been denied. He said that by talking to people in the neighborhood he determined that a majority of the people who lived in the neighborhood felt it was a part of their neighborhood and did not want this land rezoned. He said that one of their objections was that rezoning would permit more people to live on the land, thereby increasing the traffic on the streets. He said that he was opposed to so-called spot zoning and that he considered Mr. Arnold's petition to be a petition for spot zoning.

On cross-examination Dr. Bowers testified that he drove the streets in the area, "knocked on a few doors" and called on people who had asked him to look into the matter. He said that the people he talked to live in the area; that they have to use the existing streets for access to and from work, and that the bridge across the drainage ditch at the end of Hester Street creates a particular problem in handling the traffic. He said that he voted against installing speed humps on Hester Street because he does not believe in speed humps. Dr. Bowers testified on cross-examination "There are [traffic] problems all over this particular area and this was one primarily because of the construction at the end of Hester."

In the case of *City of Little Rock* v. *Andres*, 237 Ark. 658, 375 S.W. 2d 370 (1964), we set out the standard for review in rezoning cases as follows:

"If the chancellor's finding to the effect that the authorities were arbitrary in not changing the zoning is supported by a preponderance of the evidence, the decree must be affirmed. *City of Little Rock* v. *Garner*, 235 Ark. 362, 360 S.W. 2d 116; *City of Little Rock* v. *Henson*, 220 Ark. 663, 249 S.W. 2d 118; *City of Little Rock* v. *Joyner*, 212 Ark. 508, 206 S.W. 2d 446."

There is no question that the property involved in this case is bounded on the east, north and west sides by zoning classifications less restrictive than the R-2 classification requested by Arnold and recommended by the Planning Commission. We note also that none of the property owners in the area testified in the case.

In the case of *Olsen* v. *City of Little Rock*, 241 Ark. 155, 406 S.W. 2d 706, the landowner's application for rezoning his property from two-family residential to "D" apartment use, was denied by the City Administrative Agencies and the chancery court on appeal. None of the property owners in the affected area testified in that case and in reversing the chancellor's decree, we said:

"In a case of this kind the chancellor should sustain the city's action unless he finds it to be arbitrary. No matter which way the chancellor decides the question, we reverse his decree only if we find it to be against the preponderance of the evidence. *City of Little Rock* v. *Garner*, 235 Ark. 362, 360 S.W. 2d 116 (1962).

\* \* \*

That the proposed rezoning will not adversely affect the neighborhood is confirmed by the complete absence of any protest on the part of other landowners in the area. Such apparently universal acquiescence in the proposal is decidedly unusual in zoning cases. \* \* \* It is fair to conclude that none of the neighboring property owners—the group who would suffer the greatest damage if the reclassification is contrary

to the public interest—oppose the plaintiffs' petition. Upon the record as a whole we are convinced that the weight of the evidence lies on the appellants' side."

It is apparent from the testimony of members of the City Council that their primary objection to rezoning the property is because of the additional traffic such rezoning would likely create, especially on Hester Street. The chancellor viewed the area involved in this case with particular attention to the traffic on the streets, as well as the bridge across the drainage ditch at the end of Hester Street, and we are unable to say that the chancellor's decree is against the preponderance of the evidence.

The decree is affirmed.

HARRIS, C.J., not participating.